**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

GREGORY ALLEN KAEHR,                          )
                                              )
                    Plaintiff,                )
                                              )
        vs.                                   )   CAUSE NO. 3:19-CV-1171-PPS
                                              )
ANDREW M. SAUL, Acting Commissioner           )
of the Social Security Administration,        )
                                              )
                    Defendant.                )

OPINION AND ORDER

Gregory Kaehr, a 60-year old man, seeks judicial review of the Social Security

Administration's decision to deny his application for disability insurance benefits under

Title II.  He alleges his disability began on March 23, 2017.  Following a hearing, in a

decision dated December 14, 2018, an Administrative Law Judge found Kaehr was not

disabled within the meaning of the Social Security Act and that he had the residual

functional capacity (RFC) to perform a full range of work at all exertional levels with a

few restrictions.  Kaehr alleges disability based upon memory loss and concentration

problems stemming from a traumatic frontal lobe head injury he received in an accident

in 1981 where his vehicle was hit head-on by a semi truck, as well as a left hand injury

to his trigger finger.  [Tr. 205, 434.][1]

During the September 2018 hearing, Kaehr testified that he stopped working on a

production line in March 2017 due to problems with his left hand, and when he

_____

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the
lower right-hand corner of the record found at DE 8.

returned to work two months later, he had to relearn his job. [Tr. 40-41.] His memory

problems caused him issues on the assembly line, and he constantly second guesses

himself. [Tr. 40-54.] Kaehr has problems at home too, even performing simple tasks.

For example, Kaehr said he can forget where the spoon is when putting sugar in his

coffee in the morning. [Tr. 54.] Kaehr stated he needs to write everything down, and

his memory interferes with things like taking care of his animals and grocery shopping.

[Tr. 55-58, 63-64.]

Kaehr challenges the ALJ's decision on numerous grounds, but I will focus my

attention on his overarching argument that the ALJ cherry-picked evidence. While

Kaehr cannot prevail by arguing the ALJ improperly weighed the evidence, it is not

passable to completely overlook large portions of it. I agree that the ALJ highlighted

normal findings, but ignored significant evidence that suggests a disability finding.

Because I find the ALJ cherry-picked evidence, and thus didn't provide substantial

evidence to support his conclusion, I will **REVERSE** the ALJ's decision and **REMAND**

on this issue.

## Discussion

First, let's consider the legal foundation that governs how I have to look at this

case. My role is not to determine from scratch whether or not Kaehr is disabled.

Rather, I only need to determine whether the ALJ applied the correct legal standards

and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g);

*Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th

Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  My review of the ALJ's

decision is deferential. This is because the "substantial evidence" standard is not

particularly demanding.  In fact, the Supreme Court announced long ago that the

standard is even less than a preponderance-of-the evidence standard.  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).  Of course, there has to be more than a "scintilla" of

evidence.  *Id.*  This means that I cannot "simply rubberstamp the Commissioner's

decision without a critical review of the evidence."  *Clifford v. Apfel*, 227 F.3d 863, 869

(7th Cir. 2000).  Nonetheless, the review is a light one and the substantial evidence

standard is met "if a reasonable person would accept it as adequate to support the

conclusion."  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

The ALJ found that Kaehr had the severe impairment of neurocognitive disorder.

[Tr. 12.]  The ALJ determined that Kaehr had the RFC:

> to perform a full range of work at all exertional levels but with the
> following nonexertional limitations: can understand and remember
> simple instructions and carry out simple tasks in two-hour
> segments; can work in an environment free of fast-paced
> production requirements and low stress, such as no assembly line
> work and no hourly quotas; occasional interaction with supervisors
> and coworkers; no tandem tasks and no interaction with the
> general public as part of the job duties.

[Tr. 15.]  Additionally, the ALJ found that Kaehr could not perform his past relevant

work as a motor vehicle assembler, but he could perform jobs like industrial cleaner,

laundry laborer, and stores laborer.  [Tr. 17-19.]

It is well established that an ALJ "cannot simply cherry-pick facts supporting a

finding of non-disability while ignoring evidence that points to a disability finding."

*Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (internal quotes omitted).  Regrettably,

that's what seems to have occurred here.  The ALJ was quick to find persuasive the

opinion evidence of the state agency medical consultants, the state agency mental health

consultant, and the consultative examiner.  [Tr. 16-17.]  However, he found the opinion

of Dr. Paul Macellari, Kaehr's treating neuropsychologist, unpersuasive.  The problem

is the ALJ arrived at that conclusion without discussing evidence that supported Dr.

Macellari's opinion.  [Tr. 17.]  Here's the totality of what the ALJ said about Dr.

Macellari:

> Moreover, I find the opinion of Paul W. Macellari, PhD. HSPP.,
> unpersuasive.  He noted that given the severity of the claimant's
> memory deficits it is clear that the claimant is unable to return to
> his current employment; in fact it is doubtful he will be able to be
> employed in any capacity (4F).  He also opined the claimant is
> clearly incapable of working in any capacity and should be viewed
> as being a most suitable candidate for Social Security disability
> funding (11F).  His opinions are not consistent with the claimant
> maintaining normal findings during examination, such as being
> alert and oriented times three, understands basic commands,
> normal speech, no stutter, memory for recent and remote medical
> events is preserved, intellectual function is grossly normal, and
> Cranial nerves II-XII intact (5F/44, 10F/3).  Additionally, his
> opinions infringe on a matter reserved for the Commissioner,
> whether the claimant is disabled.

[Tr. 17.]

Previously, I would have faulted the ALJ's analysis of Dr. Macellari's opinion

under the treating source rule which required ALJs to give more weight to opinions

from medical sources who have examined and have a treating relationship with the

4

claimant.  *See* 20 C.F.R. § 404.1527(c)(1) and (2).  But the Social Security Administration

has jettisoned the "controlling weight" instruction that used to be given for the treating

physician.  *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) . . . , including those

from your medical sources."); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)

(noting the treating physician rule applies only to claims filed before March 27, 2017).

Because Kaehr filed his application on May 1, 2017, the treating physician rule does not

apply to him.

Under the new paradigm, an ALJ must consider *all* medical opinions based on a

number of factors including supportability, consistency, relationship with the claimant,

specialization, and other factors.  20 C.F.R. § 404.1520c(b), (c).  Although the ALJ must

consider all of these factors, he need only explain how he considered supportability and

consistency.  20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2); *see Mazza v. Saul*, No. 19-CV-

1724, 2020 WL 6909308, at *5 (E.D. Wis. Nov. 24, 2020).  The regulations recognize that

"[t]he factors of supportability . . . and consistency . . . are the most important factors we

consider when we determine how persuasive we find a medical source's medical

opinions or prior administrative medical findings to be."  20 C.F.R. § 404.1520c(b)(2);

416.920c(a).  "Therefore, we will explain how we considered the supportability and

consistency factors from a medical source's medical opinions or prior administrative

medical findings in your determination or decision."  20 C.F.R. § 404.1520c(b)(2);

416.920c(b)(2).  The ALJs may, but are not required, to explain the other factors

(including relationship with the client and specialization).

In this case, the ALJ mentions the consistency factor, finding Dr. Macellari's opinion is not consistent with other things in the record. But he did not consider the totality of the record in evaluating the consistency of Dr. Macellari's opinion. Moreover, the ALJ failed to explain how he considered the supportability of Dr. Macellari's opinion.

Let's look at how Kaehr's relationship with Dr. Macellari began, and the parameters of it. Kaehr visited his treating physician, Dr. Bajuyo (who the ALJ never mentions by name), sometime in late 2016, and Dr. Bajuyo noted that Kaehr had been off work, he was under a lot of stress, he was agitated by conflict with a co-worker, he was doing counseling for his depression/anxiety but he stopped because he thought they were "play[ing] with [his] mind," and he stopped taking Prozac because he didn't think it was helping. [Tr. 335.] So Dr. Bajuyo referred Kaehr to a specialist, Dr. Macellari, for a neuropsychological exam.

On November 2, 2016 and December 6, 2016, Dr. Macellari evaluated Kaehr and determined he was "mildly anxious," Kaehr's complex verbal calculations showed some significant disruption, written calculations were mildly impaired, his attention span showed mild impairment and his ability to sustain and focus attention was mildly to moderately impaired. [Ex. 4F, Tr. 324.] Additionally, Dr. Macellari found one testing profile showed Kaehr had chronic psychological difficulties, "considerable emotional difficulties," and lacked "a great deal of social skills." [Tr. 325-26.] Dr. Macellari

6

concluded that Kaehr had "significant attention, concentration, and short-term memory difficulties." [Tr. 326.] "Some significant frontal lobe pathology is also suspicioned." [*Id.*] He recommended more extensive testing. Kaehr then saw Dr. Bajuyo on December 21, 2016, and indicated that his "functioning [was] very difficult" and he additionally reported fatigue. [Tr. 332.]

On February 6, 2017, Dr. Macellari performed an in-depth neuropsychological evaluation. [Tr. 318-22.] On the Memory Assessment Scales, Kaehr obtained a global memory scale score of 62, which indicates "performance in the impaired range of overall memory functioning in comparison with other individuals of his age and education level." [Tr. 320.] The same test showed an "impaired ability to learn and retain information presented verbally." [*Id.*] In a detailed report, Dr. Macellari concluded that Kaehr was impaired in: auditory short-term memory, visual short-term memory, the ability to learn new information presented in either oral or written form, the ability to retain new information, the ability to retain and retrieve new verbal information which is presented within the context of normal conversation, and the ability to learn new nonverbal information. [Tr. 320-21.] Dr. Macellari made a number of specific conclusions in his report about how these impairments could effect Kaehr's ability to work, and although I won't repeat all of them right now, two of them are as follows: "[s]ince auditory short-term memory is the foundation skill for most forms of instruction and training [Kaehr's] level of ability presents a substantial barrier to most types of independent work" and "[Kaehr] appears to have significant problems in

7

consolidating information provided in an informal manner (e.g., verbal directions,

telephone conversations) over both brief period[s] of time or following a period of

delay.  At this level of performance, substantial difficulties in adjusting to normal

everyday activities can be expected."  [Tr. 320-21.]  Dr. Macellari concluded that Kaehr

had "some very substantial overall memory dysfunction" consistent with the presence

of amnestic syndrome and that "[g]iven the severity of his memory deficits it is clear

that [Kaehr] will not be able to successfully return to his employment at AM General.

In fact, I'm extremely doubtful that he will be able to be employed in any capacity."

[Tr. 322.]

Between October 17, 2017 and February 7, 2018, Kaehr saw Dr. Macellari for five

more sessions.  Dr. Macellari documented Kaehr's ongoing "significant anxiety/stress"

regarding a slew of issues including being homeless, worsening memory and

distractibility, problems with cognition, and strained relationships. [Tr. 470-93.]  On

February 22, 2018, Dr. Macellari wrote a detailed letter to Kaehr's attorney, "out of

grave concern for [his client] and my patient." [Ex. 11F, DE 440-42.]  Dr. Macellari states

in this letter that the neuropsychological testing supports the diagnosis of amnestic

syndrome, which "represents delayed progressive decline attributable to a serious

sustaining traumatic brain injury in 1981." [Tr. 440.]  Dr. Macellari explained the testing

demonstrated "some serious impulsivity; dependency issues; problems with social

skills and significant problems with distrust and suspiciousness" all indicative of frontal

lobe damage. [Tr. 440-41.]  Since his evaluation on February 6, 2018, Dr. Macellari states

he has witnessed: (1) multiple problems with judgment and decision making capability;

(2) serious obsessive ruminative thinking that interferes with Kaehr's ability to learn; (3)

significant functional problems related to his memory declines (e.g. losing things and

forgetting directions to well known locations); (4) evidence of an organic thought

disorder that impairs his cognitive grasp and higher level comprehension abilities; (5)

increased suspiciousness and guardedness with some episodes that approach frank

paranoid ideation; (6) confusion as to Dr. Macellari's clinical role; and (7) multiple

instances where Kaehr had been taken advantage of by others.  [Tr. 441.]  Dr. Macellari

concluded by noting that Kaehr's "anxiety and stress are seriously exacerbating his

existent cognitive and memory problems.  At present, he is <u>clearly</u> incapable of working

in <u>ANY</u> capacity and should be viewed as being a most suitable candidate for Social

Security disability funding."  [Tr. 442 (emphasis in original).]

        The ALJ, in a perfunctory way, brushed aside all of this evidence supporting Dr.

Macellari's opinions.  In other words, the ALJ failed to discuss the supportability (or

lack thereof) of Dr. Macellari's opinions, as required by the regulations.  20 C.F.R. §

404.1520c(b)(2), 416.920c(b)(2); *see also Alonzo v. Comm'r of Soc. Sec.*, No. CV-18-08317-

PCT-JZB, 2020 WL 1000024, at *4-5 (D. Az. Mar. 2, 2020) (finding ALJ erred in analyzing

medical opinion under the new standards where the ALJ did not address the most

important factors of supportability and consistency).  Indeed, on its face, the record

seems to show that Dr. Macellari's opinions were supported by his objective medical

examinations of Kaehr as well as tests he administered to Kaehr.  The additional

considerations also favor giving Dr. Macellari's opinion more persuasiveness, including

that he is a specialist in neuropsychology and treated Kaehr extensively in 2016 and

2017. *See* 20 C.F.R. § 404.1520c(c)(3), (4). Moreover, when conclusively stating that Dr.

Macellari's opinions were not consistent with other findings in the record, the ALJ

omitted the fact that Dr. Macellari's findings *are* consistent with the findings of other

medical sources including Dr. Bajuyo, Dr. Warner, and Dr. Englert. [Tr. 305-09, 311-13,

332-36, 338-39, 463-66.]

Dr. Macellari's opinion is also consistent with a Disability Report authored by a

claims representative on May 8, 2017, who interviewed Kaehr and observed that he had

difficulty "concentrating, talking, answering" and noted that he had "some slurring of

speech and difficulty speaking." [Tr. 214.] While the ALJ certainly does not have to

discuss every piece of evidence, *Golembiewski v. Barnhart*, 322 F.3d at 912, 917 (7th Cir.

2003), the Disability Report is another piece of evidence that fits into the troubling

category of evidence that supports Kaehr's claims, but was not taken into account by

the ALJ. And while I wouldn't worry if the testimony of the Claims Representative was

just redundant, or testimony not favorable to Kaehr, this evidence is quite the opposite

as it indicates that Kaehr had some difficulty answering the questions and

concentrating.

Finally, the ALJ faults Dr. Macellari's opinion for "infring[ing] on a matter

reserved for the Commissioner." [Tr. 17.] While it is true that the Commissioner must

decide the ultimate issue of disability, it is also well settled that:

10

> [O]pinions from any medical source on issues reserved to the
> Commissioner must never be ignored.  The adjudicator is required
> to evaluate all evidence in the case record that may have a bearing
> on the determination or decision of disability, including opinions
> from medical sources about issues reserved to the Commissioner.
> If the case record contains an opinion from a medical source on an
> issue reserved to the Commissioner, the adjudicator must evaluate
> all the evidence in the case record to determine the extent to which
> the opinion is supported by the record.

 SSR 96-5p, 1996 WL 374183, at *3.  While "a medical opinion on an ultimate issue such

as whether the claimant is disabled is not entitled to controlling weight, the ALJ must

consider the opinion."  *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004).  Thus, it is

improper for the ALJ to outright dismiss Dr. Macellari's opinions simply because he

stated, among many other opinions, that Kaehr was not fit to work.

        All of this was not harmless error.  Dr. Macellari's letter to Kaehr's counsel based

upon his continued evaluation and treatment of Kaehr, noting his decline and stating

his concern for Kaehr was authored February 22, 2018.  This post dates all of the

opinions of the state agency medical consultants, mental health consultants, and the

consultative examiner.  "An ALJ should not rely on an outdated assessment if later

evidence containing new, significant medical diagnoses reasonably could have changed

the reviewing physician's opinion."  *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018).

Moreover, Kaehr's anxiety, when considered in combination with his memory issues

and neurocognitive disorder, could affect Kaehr's resulting RFC assessment.

        Due to the errors articulated in this order, substantial evidence does not support

the ALJ's decision to find Dr. Macellari's opinions unpersuasive, and the case must be

remanded for reconsideration of his opinion.  On remand, the ALJ should reevaluate the opinion of the treating neuropsychologist, Dr. Macellari.  If the ALJ again determines that his opinions are not persuasive, the ALJ should make sure to address the supportability and consistency of Dr. Macellari's opinion, as compared to the entire record, as well as consider the other factors set forth in 20 C.F.R. § 404.1520c.

*  *  *

Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Kaehr.  He can raise those issues directly with the ALJ on remand.

### Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the  Social Security Administration for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: February 1, 2021.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT